**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| JOE GLENN,<br>        *Plaintiff*,<br><br>        v.<br><br>KELLY SERVICES, INC. and NEW<br>LONDON BOARD OF EDUCATION,<br>        *Defendants*. | No. 3:24-cv-00894 (VAB) |

**RULING AND ORDER ON MOTIONS TO DISMISS**

Joe Glenn ("Plaintiff" or "Mr. Glenn") has filed an action against Kelly Services, Inc.

("Kelly") and New London Board of Education ("New London"), collectively the Defendants.

*See* Second Am. Compl., ECF No. 48 ("Compl."). Mr. Glenn alleges retaliation against Kelly

Services and New London and race discrimination against New London under Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as well as retaliation and race

discrimination against Kelly and New London under the Connecticut Fair Employment Practices

Act ("CFEPA"), Conn. Gen. Stat. § 46a-60. He further alleges promissory estoppel against Kelly

and New London, and joint employer liability against Kelly and New London.

Kelly and New London have filed separate motions to dismiss the Complaint under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

For the following reasons, the motions to dismiss are **GRANTED in part and DENIED**

**in part**.

Mr. Glenn's Title VII claim for retaliation against Kelly related to the November 2021

and November 2022 allegations, CFEPA, and promissory estoppel claims are **DISMISSED**.

To the extent that the deficiencies identified in this Ruling and Order can be remedied,

Mr. Glenn must file a Third Amended Complaint by **May 1, 2026**. If he chooses to allege his

CFEPA claim again as part of any Third Amended Complaint, he must append the administrative release letter from the Connecticut Commission on Human Rights and Opportunities ("CHRO") in order for this claim to proceed.

If a Third Amended Complaint is not filed by **May 1, 2026**, the case will proceed on the claims remaining in the Second Amended Complaint.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Mr. Glenn is a Black man, who was employed by Kelly Services, a staffing company, to provide substitute teaching services at CB Jennings International Elementary Magnet School and New London High School. Compl. ¶¶ 2-3.

On November 4, 2021, Mr. Glenn allegedly reported "severe operational failures and safety hazards to administrators" at New London High School. *Id.* ¶ 2. Within hours of Mr. Glenn's complaints, school administrators allegedly directed Kelly Services to restrict Mr. Glenn's employment opportunities, allegedly resulting in his immediate removal from the school. *Id.*

In October 2022, the New London Board of Education allegedly had an open vacancy for the position of Executive Director of Business and Finance ("Executive Director").

In November 2022, Mr. Glenn allegedly reported systemic negligence and safety concerns at CB Jennings Elementary School, after which the assistant principal allegedly attempted to have him removed. *Id.* ¶ 3. The principal allegedly later intervened to reverse the decision to remove him. *Id.*

In January 2023, Mr. Glenn allegedly applied for the position. *Id.* ¶ 10.

In February 2023, New London allegedly removed the job posting, and reposted the position in April 2023. *Id.* ¶ 11.

In April 2023, Mr. Glenn allegedly re-applied for the Executive Director position, submitting a follow-up e-mail and cover letter to the school district. *Id.* ¶ 12. Superintendent Cynthia Ritchie allegedly forwarded Mr. Glenn's cover letter to President of the New London NAACP Jean Jordan. Ms. Jordan allegedly responded with her opinion that Mr. Glenn was "not [New London] material," that he was "pompous" and "arrogant," that he was "not a team player," and that he "does not have [New London NAACP's] support." *Id.* ¶ 14.

Mr. Glenn was allegedly never given the opportunity to interview for the Executive Director position. *Id.* ¶ 17. The position allegedly remained unfilled for seven months, and was allegedly given to a white man who allegedly held a lower-level position in the district. *Id.*

On June 1, 2023, Kelly allegedly sent an e-mail to Mr. Glenn with an invitation to return to the New London school district for the 2023-2024 school year. *Id.* ¶ 34.

On June 8, 2023, Mr. Glenn allegedly sent an e-mail to the Superintendent and the Executive Director of Human Resources seeking "fair treatment" in the hiring process. *Id.* ¶ 4.

On June 22, 2023, New London allegedly directed Kelly to exclude Mr. Glenn from all future assignments, and Mr. Glenn was allegedly removed from all teaching assignments without notice or explanation. *Id.* ¶¶ 25, 36.

Upon learning of his termination, Mr. Glenn allegedly attempted to contact his designated point of contact at Kelly but allegedly received no response. *Id.* ¶ 28. Mr. Glenn was allegedly forced to seek other employment, eventually securing a position in Providence, Rhode Island. *Id.* ¶ 29. Mr. Glenn alleges that the commute placed "excessive wear" on his vehicle, ultimately

causing transmission failure that compounded the financial hardship allegedly caused by the Defendants' actions. *Id.* ¶ 32.

Mr. Glenn alleges he suffered "significant financial losses, career setbacks, and emotional distress" as a result of the Defendants' alleged actions. *Id.* ¶ 33.

On July 13, 2023, Mr. Glenn allegedly filed a charge with the Equal Employment Opportunity Commission ("EEOC") against New London concerning New London's alleged hiring discrimination. EEOC Charge, ECF No. 55-1 ("2023 EEOC Charge").

On February 2, 2024, Mr. Glenn filed a charge against Kelly with the EEOC alleging retaliation for having filed the earlier complaint against New London. EEOC Charge, ECF No. 51-2 ("2024 EEOC Charge").

### B. Procedural History

On May 17, 2024, Mr. Glenn filed a Complaint against Kelly Services, Inc. Compl., ECF No. 1.

On June 5, 2024, Mr. Glenn moved to amend the Complaint to join New London Public Schools as a Defendant. Mot. to Amend Compl., ECF No. 9.

On June 10, 2024, the Court granted the motion, Order granting Mot. to Amend, ECF No. 11.

On June 14, 2024, Mr. Glenn filed an Amended Complaint, adding New London Public Schools as a Defendant. Am. Compl., ECF No. 13.

On August 21, 2024, the Defendants filed a motion for a more definite statement, requesting that Mr. Glenn, amongst other things, correct the name of Defendant New London Public Schools, which is not a legal entity, to New London Board of Education. Joint Mot. for More Definite Statement, ECF No. 37.

4

On January 31, 2025, the Court granted the Defendants' motion for a more definite statement and ordered Mr. Glenn to file a Second Amended Complaint "clearly enumerating his claims, identifying the statutory or common law basis for those claims, and specifying which claims apply to which Defendants." Order, ECF No. 47.

On February 27, 2025, Mr. Glenn filed a Second Amended Complaint terminating New London Public Schools as a Defendant and adding New London Board of Education as a Defendant. Second Am. Compl., ECF No. 48 ("Compl.").

On March 27, 2025, Kelly filed a motion to dismiss the Complaint. Mot. to Dismiss, ECF No. 51 ("Kelly MTD").

On March 27, 2025, New London filed a motion to dismiss the Complaint. Mot. to Dismiss, ECF No. 53 ("New London MTD").

On April 10, 2025, Mr. Glenn filed a memorandum in opposition to New London's motion to dismiss. Mem. in Opp., ECF No. 55 ("Mem. in Opp. to New London").

On April 11, 2025, Mr. Glenn filed a memorandum in opposition to Kelly's motion to dismiss. Mem. in Opp., ECF No. 56 ("Mem. in Opp. to Kelly").

On April 24, 2025, New London filed a reply. Reply to Resp., ECF No. 57 ("New London Reply").

On April 25, 2025, Kelly filed a reply. Reply to Resp., ECF No. 58 ("Kelly Reply").

## II.   STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the

burden of establishing subject matter jurisdiction over the claims by a preponderance of the evidence. *Id.*

Under Federal Rule of Civil Procedure 12(b)(1), the facts alleged in the Complaint are viewed in the light most favorable to the plaintiff and all reasonable inferences must be drawn in the plaintiff's favor. *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) ("When reviewing a district court's Rule 12(b)(1) determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo . . . Moreover the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." (internal quotations and citations omitted)). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Kelly and New London separately move to dismiss Mr. Glenn's Complaint, and make three overlapping arguments: (1) the joint employer liability doctrine does not provide an

independent claim for relief and otherwise does not apply to the facts here; (2) Mr. Glenn failed to exhaust his administrative remedies with respect to his Title VII retaliation claim and his CFEPA retaliation and discrimination claims, depriving the Court of subject matter jurisdiction; and (3) Mr. Glenn's claim for promissory estoppel is prohibited by caselaw in this Circuit, and he has otherwise failed to state the necessary elements of the claim. Kelly additionally moves to dismiss the retaliation claims for failure to state a claim, arguing that the underlying facts are related to actions by and communications with New London alone.

The Court discusses each issue in turn.

### A.  The Joint Employer Doctrine

"[I]n certain circumstances an employee may assert employer liability against an entity that is not formally his or her employer." *Felder v. United States Tennis Association*, 27 F.4th 834, 842 (2d Cir. 2022) (citation and internal quotation marks omitted). Under "the 'joint employer doctrine,' one such circumstance exists when an employee formally employed by one entity is assigned to work in circumstances that justify the conclusion that the employee is constructively employed by another entity." *Id.* (citation and internal quotation marks omitted). If so, "the employee may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Id.* (citation and internal quotation marks omitted).

Because "the common law of agency governs the meaning of 'employer' and 'employee' in Title VII," *id.* at 843 (citation omitted), "a *joint* employer relationship [exists] when two or more entities, according to common law principles, share significant control of the same employee." *Id.* (citations omitted) (emphasis in original). In such circumstances, "[t]his means that an entity other than the employee's formal employer has power to pay an employee's salary,

8

hire, fire, or otherwise control the employee's daily employment activities, such that we may properly conclude that a constructive employer-employee relationship exists." *Id.* Significantly, "[t]he joint employer doctrine does not require that an entity exert *no* control over who may or may not work at its facilities, only that it may not exert *significant* control without being subject to Title VII." *Id.* at 847 (emphasis in original).

Kelly and New London argue that Claim Five of Mr. Glenn's Complaint titled "Joint Employer Liability" should be dismissed because that theory does not create an independent cause of action. Kelly Mot. to Dismiss at 5; New London Mot. to Dismiss at 14. In any case, Kelly argues that Mr. Glenn has not sufficiently pled the elements of the doctrine to show that Kelly and New London constitute a single employer. *Id.* at 5-7.

Mr. Glenn responds that he "does not assert 'Joint Employer Liability' as an independent claim but rather as a theory of liability applicable to both Title VII and CFEPA claims." Mem. in Opp. to New London at 5. He also argues that the Complaint sufficiently shows that "Kelly was not operating as an independent employer" but rather as "an enforcement arm of the district's decisions." Mem. in Opp. to Kelly at 5. He states that courts "routinely apply [the joint employer liability doctrine] to staffing agencies that act on client direction in employment decisions without independently evaluating the merits." *Id.* (citing *Arculeo v. On-Site Sales & Mktg.*, LLC, 425 F.3d 193 (2d Cir. 2005)).

The Court agrees.

As a preliminary matter, Mr. Glenn properly alleges the joint employer doctrine as a theory of liability, rather than as a separate and distinct claim. *See Felder*, 27 F.4th at 845 ("We think that the joint employer analysis in this case should be the same, as we are tasked with assessing the same fundamental question: Did the parties contemplate an employer-employee

relationship that would permit Title VII liability?"). The issue then is whether Mr. Glenn has sufficiently alleged this theory of liability. The answer is yes.

As the Second Circuit described the pleading standard in *Felder*, "[a]t the motion to dismiss stage, a plaintiff's burden . . . is not great." *Id.* Instead, "[i]t must only be plausible and not merely speculative," *id.*, that Kelly and New London "exerted significant control over the terms and conditions of his employment . . . ." *Id.* (citing *Twombly*, 550 U.S. at 556). Here, Mr. Glenn alleges that: "New London Board of Education and Kelly Services operated in a manner that blurred the distinction between employer and contractor, functioning as though they were different departments within the same organization rather than two separate entities," Compl. ¶ 46; "New London directed [Kelly] to remove Plaintiff from assignments," *id.* ¶¶ 5, 25; "New London Board of Education maintained significant control over the hiring, assignment, and removal of personnel within its schools, including those employed through Kelly Services," *id.* ¶ 43; "The Board dictated who could and could not work in its schools, issuing directives that Kelly Services was expected to enforce without independent review or due process considerations," *id.*; "By collaborating in employment decisions and mutually enforcing each other's directives, New London Board of Education and Kelly Services exercised joint control over Plaintiff's employment conditions and ultimate termination," *id.* ¶ 48.

Because Mr. Glenn has alleged that New London and Kelly shared control over his "hiring, firing, . . . [and] discipline," he has sufficiently alleged joint employer liability. *Cf. Felder*, 27 F.4th at 845 ("Felder does not allege that the USTA had any control over his hiring or firing."); *id.* at 846 ("Nor did he allege that the USTA exerted any control over AJ Security's independent hiring process."). As a result, his Title VII and CFEPA claims may proceed on the joint employer theory of liability for now.

Accordingly, the Defendants' motion is denied on these grounds.

## B. The Exhaustion of Administrative Remedies

Mr. Glenn alleges that Kelly and New London retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* He also alleges that Kelly and New London retaliated and discriminated against him in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60. Kelly argues that Mr. Glenn failed to administratively exhaust his Title VII retaliation claim related to his November 2021 and November 2022 allegations.

Both Kelly and New London argue that Mr. Glenn failed to administratively exhaust his CFEPA claims, depriving this Court of subject matter jurisdiction.

The Court will address each specific claim in turn.

### 1. The Title VII Claim

A plaintiff alleging employment discrimination under Title VII may not seek relief in a federal court until the plaintiff timely exhausts administrative remedies before the U.S. Equal Employment Opportunity Commission ("EEOC"). *Hansen v. Jones Lang LaSalle Americas, Inc.*, 103 F.Supp.3d 221, 222 (D. Conn. 2015). "Before bringing a Title VII suit in federal court, an individual must first present the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency." *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (citation omitted and internal quotation marks omitted). But because failure of a Title VII plaintiff to exhaust administrative remedies is a claims-processing rule—as opposed to a jurisdictional rule—exhaustion of administrative remedies as a prerequisite to suit is subject to equitable defenses, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385–86 (2d Cir. 2015) (citing *Bowles v. Russell*, 551 U.S. 205, 216 (2007) (Souter, J., dissenting)); *see also Fernandez*

11

*v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006) ("Because [the] failure to exhaust [one's] administrative remedies is not a jurisdictional defect, it is subject to equitable defenses."), and waiver, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

While Mr. Glenn's Complaint alleges facts occurring from November 4, 2021 to July 13, 2023, the February 2024 EEOC charge against Kelly only alleged retaliation related to Mr. Glenn's July 2023 EEOC charge, which concerned New London's alleged hiring discrimination for the Executive Director position. Kelly argues that there are remaining factual allegations separate from the hiring discrimination claim that Mr. Glenn failed to exhaust, namely the November 2021 allegation that school administrators directed Kelly to restrict Mr. Glenn's employment following complaints of "severe operational failures and safety hazards" at New London High School, Compl. ¶ 2, alleged retaliation in November 2022 for reporting systemic negligence and safety concerns at CB Jennings Elementary School, *id.* ¶ 3, and alleged retaliation in June 2023 for requesting "fair treatment" in the hiring process, *id.* ¶ 4.

Thus, Kelly argues that the November 2021 and November 2022 allegations have not been exhausted, depriving this Court of subject matter jurisdiction over any claims for retaliation against Kelly for actions preceding July 2023. Kelly MTD at 7-8. Kelly also argues that because Mr. Glenn's 2024 EEOC charge only references retaliation starting on July 14, 2023, he has not exhausted any retaliation claim related to his June 2023 request for "fair treatment." *Id.* at 10. Finally, Kelly argues that Mr. Glenn may no longer bring an EEOC charge alleging pre-July 2023 facts because the 300-day clock for bringing an EEOC charge has since expired. *Id.* at 8.

The Court disagrees, in part.

A court may hear only those Title VII claims "that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that

alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (citation omitted), *superseded by statute on other grounds*. The Second Circuit has also recognized several situations "where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action," and has "loosely referred to these claims as 'reasonably related' to the allegations in the EEOC charge." *Butts*, 990 F.2d at 1402. The defense arises from a recognition that "EEOC charges frequently are filled out by employees without the benefit of counsel . . ." *Id.*

Mr. Glenn's February 2024 EEOC charge was "based on retaliation for engaging in a protected activity," namely "filing an EEOC charge, number 523-2023-01582, against New London Schools for not considering [him] for an open role." 2024 EEOC Charge at 1. The July 2023 charge alleges that Mr. Glenn did not receive an interview for the Executive Director position "because of [his] race, black, African American." 2023 Charge at 1. He also states that "after engaging in protected activity, in retaliation, Respondent stopped hiring me as contract substitute teacher." *Id.* Neither Defendant argues that Mr. Glenn has failed to exhaust the retaliation claim contained in the 2023 EEOC charge, or the retaliation claim for filing the 2023 EEOC charge alleged in the 2024 EEOC charge. The issue is whether the allegations from November 2021 and November 2022 and the request for fair treatment from June 2023 are "reasonably related" to the February 2024 EEOC charge to deem any retaliation claims brought against Kelly that stem from that conduct as administratively exhausted.

Subsequent conduct is reasonably related to conduct in an EEOC charge if: "[1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff 'alleges

further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (quoting *Butts*, 990 F.2d at 1402–03). In addition to alleging retaliation for filing the July 2023 EEOC charge, the February 2024 EEOC charge also alleges that Kelly is "culpable for the retaliatory actions [Mr. Glenn] experienced from the school district," which reasonably includes his alleged firing in response to his request for "fair treatment." 2024 EEOC Charge at 1. Thus, the Court finds that a retaliation claim based on alleged termination for requesting fair treatment in the hiring process is reasonably related to the February 2024 EEOC claim to have been sufficiently exhausted.[1]

The November 2021 incident concerned Kelly's alleged restriction of Mr. Glenn's employment following complaints made to New London High School, and the February 2024 claim concerned Kelly's alleged termination of Mr. Glenn's employment following complaints made about New London's alleged hiring discrimination. It is reasonable that an investigation into the February 2024 EEOC charge would prompt an investigation of the 2021 factual allegations, insofar as it would help establish past patterns of retaliation by Kelly against Mr. Glenn following Mr. Glenn's complaints about New London. *Cf. Walsh v. Nat'l Westminster Bancorp., Inc.*, 921 F. Supp. 168, 172 (S.D.N.Y. 1995) (finding that sexual harassment claim was not reasonably related to retaliation claim because "the sexual harassment claim is an entirely distinct theory of liability predicated on acts related to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature").

But the Supreme Court has held that "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Nat'l R.R. Passenger Corp. v.*

---

[1] Importantly, June 8, 2023, the date on which the email was allegedly sent, is within 300 days of February 26, 2024, the date on which the EEOC charge against Kelly was filed. Therefore, the Court is satisfied that the events on which the retaliation claim is based are within the statutory time-limit for filing an EEOC charge.

*Morgan*, 536 U.S. 101, 112 (2002); *see also United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (finding that a prior unlawful employment practice "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue," but "United was entitled to treat [Evans' forced resignation] as lawful after [she] failed to file a charge of discrimination" within the charge filing period then allowed by the statute). The Supreme Court has elaborated:

> "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim."

*Nat'l R.R. Passenger Corp.*, 536 U.S. at 113. In other words, the fact that the 2021 incidents are "reasonably related" to the 2024 EEOC charge does not permit Mr. Glenn to bring a separate retaliation charge for the conduct occurring in 2021. He is permitted to use the factual allegations underlying the 2021 incident only as "background evidence in support of [his] timely claim[s]." *See id.*

With respect to the November 2022 incident, Mr. Glenn alleges that he was temporarily removed from his position by the assistant principal after reporting systemic negligence and safety concerns at CB Jennings Elementary School. Compl. ¶ 3. The principal allegedly later intervened to reverse the decision to remove him. *Id.* This alleged retaliation occurred in between the posting of the Executive Director vacancy and Mr. Glenn's application for the position.

Therefore, it is reasonable to expect that an investigation into his July 2023 EEOC charge against New London would include this incident.

The July 2023 charge, however, was only filed against New London, and the factual allegations underlying the November 2022 incident are unrelated to Mr. Glenn's February 2024 EEOC charge against *Kelly*. *See, e.g., Walsh*, 921 F. Supp. at 172 ("First, by its terms, the charge relates directly and specifically to retaliation taken in response to Walsh's complaints about Feuer after Feuer was fired. The details underlying those complaints are not directly related to the question of whether NatWest retaliated against Walsh for asserting them."); *see also Maloney v. Connecticut Orthopedics, P.C.*, 47 F. Supp. 2d 244, 247 (D. Conn. 1999) ("As a general rule, a private civil action under Title VII can be brought only against parties who are first named in a complaint filed with the EEOC.").

And Mr. Glenn's Complaint nowhere alleges that Kelly had any involvement in the assistant principal's decision to remove Mr. Glenn, or the principal's decision to reinstate him. Thus, Mr. Glenn has failed to sufficiently allege that the November 2022 incident is reasonably related to the retaliation claim against Kelly stemming from his February 2024 EEOC charge.

Accordingly, to the extent that Mr. Glenn seeks to assert an independent retaliation claim stemming from the November 2021 incidents against Kelly, those claims are dismissed.

Mr. Glenn is similarly unable to assert a retaliation claim stemming from the November 2022 incidents against Kelly, although any such claim survives against New London, insofar as it relates to the July 2023 EEOC charge alleging retaliation and hiring discrimination related to Mr. Glenn's application for the Executive Director position.[2]

---

[2] New London has not moved to dismiss Mr. Glenn's Title VII claims for failure to exhaust. As a result, the Court does not address whether Mr. Glenn has successfully administratively exhausted his Title VII retaliation claims against New London.

The retaliation claims against Kelly related to the June and July 2023 events, however, have been sufficiently exhausted.

### 2. The CFEPA Claim

In order to bring a CFEPA claim in federal court, a plaintiff must first exhaust administrative remedies by filing a complaint with the Connecticut Commission on Human Rights and Opportunities. *See Collins v. Univ. of Bridgeport*, 781 F. Supp. 2d 59, 62 (D. Conn. 2011). "Following Connecticut precedent, the courts of this District have concluded that, unlike in the Title VII context, exhaustion of administrative remedies is to be treated as a jurisdictional requirement for a plaintiff's CFEPA claim, and duly have held that no CFEPA claim may be heard by the District Court absent a release of jurisdiction by the [CHRO]." *McVay v. Stefanou*, No. 3:20-cv-00764 (CSH), 2021 WL 3260852, at *8 (D. Conn. July 30, 2021); *see also Sullivan v. Bd. of Police Comm'rs of City of Waterbury*, 491 A.2d 1096, 1101-02 (Conn. 1985) ("[The plaintiff's] failure to ... bring his complaint to the CHRO forecloses his access to judicial relief, because it deprived the trial court of jurisdiction to hear his complaint."). As a result, "[t]he courts of this District have consistently applied the exhaustion provisions of the CFEPA to dismiss discrimination claims, finding a lack of subject matter jurisdiction where the plaintiff failed to obtain the requisite release prior to pursuing a private cause of action in court." *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 272 (D. Conn. 2010) (collecting cases).

The basis of Mr. Glenn's CFEPA claim is that "[o]n June 22, 2023, New London Board of Education directed Kelly Services to exclude Plaintiff from all future assignments, effectively terminating his employment without notice or justification." Compl. ¶ 25.

Kelly and New London argue that Mr. Glenn failed to file a charge and obtain a release from the CHRO for this CFEPA claim, thereby depriving this Court of subject matter

jurisdiction. Kelly Mot. to Dismiss at 11-12; New London Mot. to Dismiss at 7-8. Kelly argues that Mr. Glenn was required to file his charge with the CHRO within 300 days of the alleged discriminatory acts, and because 300 days have passed since the alleged June 2023 conduct, he may no longer bring a CFEPA claim on those grounds. Kelly Mot. to Dismiss at 12. New London adds that any right-to-sue letter Mr. Glenn received from the EEOC is insufficient, since Mr. Glenn must provide a release of jurisdiction from the CHRO in order to proceed on his CHRO claims. New London Mot. to Dismiss at 9.

Mr. Glenn responds that both of his EEOC charges were dual filed with the EEOC and the CHRO, and that Kelly in its position statement in response to the 2024 EEOC charge acknowledged as much. Mem. in Opp. to Kelly at 2-3; Mem. in Opp. to New London at 2. Mr. Glenn also argues that he filed a separate employment discrimination inquiry with the CHRO, and "[w]hether the CHRO independently docketed this second communication as a formal complaint does not negate the Plaintiff's effort or intent to pursue relief through the appropriate administrative channels." Mem. in Opp. to New London at 2-3. In addition to the dual-filed charges, Mr. Glenn also states that he took "affirmative steps to engage the CHRO independently of his EEOC charge," for example through emails to CHRO Supervisor Neva Vigezzi and phone calls with a CHRO representative. *Id.* at 3-4.

Kelly makes two arguments in return. First, Kelly argues that the February 2024 EEOC charge, even if it were dual filed, made no reference to any claim under CFEPA. Kelly Reply at 2. Second, Kelly argues that if the Court finds that Mr. Glenn exhausted the claims included in the February 2024 EEOC charge, Mr. Glenn cannot bring any claims against Kelly that precede May 2, 2023, which is 300 days before Mr. Glenn filed the 2024 EEOC charge. *Id.* at 2-3. New London argues that Mr. Glenn failed to establish that he received a release of jurisdiction from

18

the CHRO prior to bringing his CFEPA claims and that he failed to allege a violation of CFEPA in his EEOC complaint. New London Reply at 3, n.4.

The Court agrees, in part.

Mr. Glenn was not required to refer to the CFEPA in his EEOC charge in order to exhaust his CFEPA claims. Regulations require that an EEOC charge include "a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices," but they do not require the individual to name the statutes he believes were violated by the conduct in question. *See* 29 C.F.R. § 1601.12.

Kelly argues that Mr. Glenn did not timely file with the EEOC, so any claims falling outside of the 300-day timeframe to file an EEOC charge are time-barred. But Kelly concedes that July 13, 2023, the date on which Mr. Glenn filed the 2023 EEOC charge, is less than 300 days before February 26, 2024, the date on which he filed the 2024 EEOC Charge. Kelly Reply at 3, n.3. And the CFEPA claim in Mr. Glenn's Complaint only concerns acts described in Mr. Glenn's February 2024 EEOC charge, namely the termination of Mr. Glenn's employment on June 22, 2023. Compl. ¶¶ 23-33. Mr. Glenn's CFEPA claim does not allege violations arising from conduct preceding that date. *Id.* Thus, the Court need not dismiss "any [CFEPA] claims that occurred prior to May 2, 2023," since Mr. Glenn has alleged none. Kelly Reply at 3-4.

In both of his EEOC charges, Mr. Glenn allegedly opted for "the charge [to be] filed with both the EEOC and the State or local Agency, if any," and listed the "Connecticut Comm. On Human Rights and Opportunities" as the relevant state agency. *See* 2023 EEOC Charge; *see also* 2024 EEOC Charge; *but see Ortiz v. Prudential Ins. Co.*, 94 F. Supp. 2d 225, 231 (D. Conn. 2000) ("The CHRO . . . is authorized to accept charges for the EEOC . . . Plaintiff's CHRO

19

complaint included an EEOC charge form, and in practice this is often the way that EEOC proceedings are instituted . . .").

He has not, however, demonstrated that he received a release of jurisdiction from the CHRO, enabling him to bring suit in this Court. *Fried v. LVI Servs., Inc.*, 557 F. App'x 61, 63 (2d Cir. 2014) ("It is undisputed that CFEPA claims must initially go through the CHRO, and may not be sued upon until the CHRO grants a release of jurisdiction.") (citing Conn. Gen. Stat. § 46a-82 and *Sullivan*, 491 A.2d at 1100–02); *see also Ortiz v. Univ. of Connecticut*, No. 3:24-CV-00350 (JCH), 2024 WL 4871675, at *4 (D. Conn. Nov. 22, 2024) ("It is uncontroverted that Ms. Ortiz has failed to secure an administrative release letter from the CHRO. Therefore, even assuming that a dual filed Charge constitutes a filing with the CHRO as Ms. Ortiz alleges, the court lacks jurisdiction unless Ms. Ortiz's case constitutes an exceptional circumstance.").

Accordingly, Mr. Glenn's CFEPA claims will be dismissed without prejudice.

If he files a Third Amended Complaint, he must append the administrative release letter from the CHRO in order for his CFEPA claims to proceed.

### C.  The Promissory Estoppel Claim

"Connecticut recognizes the doctrine of promissory estoppel as laid out in the Restatement (Second) of Contracts, which 'states that ... [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299, 308 (D. Conn. 2000) (quoting *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, 520 A.2d 217 (1987)). "A plaintiff claiming promissory estoppel under Connecticut law must prove (1) that the defendant did or said something intended to induce another party to believe

20

that certain facts existed and to act on that belief, (2) that the plaintiff changed its position based on those facts, and (3) that doing so incurred some injury." *Taylor Theunissen, M.D., LLC v. United HealthCare Grp., Inc.*, 365 F. Supp. 3d 242, 247 (D. Conn. 2019) (citation omitted).

Mr. Glenn alleges that in June 2023, Kelly sent an e-mail with an invitation to return to New London Public Schools for the 2023-2024 school year, thereby "creating a clear and reasonable expectation of continued employment." Compl. ¶ 34. He alleges that he "reasonably relied on the assurance of continued work and made financial and professional decisions accordingly." *Id.* ¶ 35. Due to Kelly's alleged failure to notify him that he would not be returning to New London Public Schools, Mr. Glenn allegedly did not seek alternative employment in a timely manner, which allegedly delayed his ability to apply for unemployment benefits and allegedly caused significant financial harm. *Id.* ¶¶ 37-38. He also alleges that he suffered "unnecessary hardship[] and emotional distress" as a result of Kelly's alleged actions. *Id.* ¶ 40.

Kelly argues that the Plaintiff's promissory estoppel claim should be dismissed because Mr. Glenn "failed to allege any facts to support the elements of his claim and courts in the Second Circuit have consistently declined to allow promissory estoppel claims in an employment context." Kelly Mot. to Dismiss at 12. Specifically, Kelly argues that the invitation to return to New London Public Schools was "simply an offer of potential reassignment" rather than a "clear, unambiguous promise with clearly defined terms and conditions." *Id.* at 13. Next, Kelly argues that Mr. Glenn offers no more than "naked assertions" to support the second and third elements of a promissory estoppel claim. *Id.* Finally, Kelly argues that courts in the Second Circuit have "consistently declined to allow promissory estoppel claims in an employment context." *Id.* at 13-14.

21

New London argues that Mr. Glenn's promissory estoppel claim against it should be dismissed because "a public agency cannot be held liable for promissory estoppel [under] *Fennell v. City of Hartford*, 238 Conn. 809 (1996) and its progeny." Under *Fennell*, New London argues that Kelly was not "an authorized agent of the Board with actual authority to obligate the Board to have Plaintiff as a substitute teacher during the 2023-2024 school year." New London Mot. to Dismiss at 11-12. Even if the *Fennell* doctrine did not preclude Mr. Glenn's claim, New London argues that his claim should be dismissed because New London was not the alleged promisor in the June 2023 e-mail, the e-mail lacked a clear and definite promise of future employment, and Mr. Glenn could not have reasonably relied on a promise made by anyone other than New London. *Id.* at 12-13.

In response, Mr. Glenn reasserts that the e-mail he received from Amanda Graf was a clear and unambiguous promise of future employment. Mem. in Opp. to Kelly at 6. He also argues that the holding in *Fennell* is not absolute, and that courts in this Circuit have recognized an exception "where there is detrimental reliance on explicit representations made by public officials." Mem. in Opp. to New London at 4. Because New London allegedly directed Kelly to not hire him for the upcoming school year, he argues that both entities share liability under the joint employer liability doctrine. *Id.*

The Court disagrees.

The alleged e-mail contained the following: "I hope you have been enjoying your position as the building substitute for the Bennie Dover Jackson School. We are beginning to secure building substitutes for next school year. If you are interested in having the same position, please respond to this email with your response." E-mail from Amanda Graf, ECF No. 53-2.

While the alleged promise "need not be the functional equivalent of an offer to enter into a contract," *Cweklinsky v. Mobil Chem. Co.*, 364 F.3d 68, 78 (2d Cir. 2004) (citing *Stewart v. Cendant Mobility Services Corp.,* 837 A.2d 736, 742–43 (2003)), it must still be sufficiently clear and definite to constitute an "expression[] of commitment as opposed to [an] expression[] of intention, hope, desire or opinion." *Stewart*, 837 A.2d at 742–43. The communication suggests that if Mr. Glenn was interested in retaining his position at Bennie Dover Jackson School, Kelly would take his interest into account in determining assignments for the upcoming school year.

But the e-mail contains no such promise of reassignment to Bennie Dover Jackson School. Rather, Kelly explicitly states that it is "beginning" to secure building substitutes and simply asks Mr. Glenn to indicate his interest, presumably to aid Kelly in making its offers of reassignment for various positions across the school district. *See id.* ("Additionally, the promise must reflect a present intent to commit as distinguished from a mere statement of intent to contract in the future" and "a mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance and, therefore, is not sufficiently promissory.") (internal citations omitted).

The e-mail from Ms. Graf therefore cannot plausibly be a promise of employment, but rather an invitation to express interest in returning to the position. The e-mail does not constitute a promise sufficient to establish a claim for promissory estoppel.

Accordingly, Mr. Glenn has failed to state a claim for promissory estoppel, and this claim will be dismissed.[3]

---

[3] Because Mr. Glenn has failed to allege that the e-mail from Ms. Graf contained a sufficiently clear and unambiguous promise upon which he reasonably relied, the Court need not analyze the parties' remaining arguments.

### D.  The Retaliation Claim

Under Title VII, an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). "To establish a prima facie case of retaliation, [a plaintiff] must show (1) that [he] participated in an activity protected by Title VII, (2) that [his] participation was known to [his] employer, (3) that [his] employer thereafter subjected [him] to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

Mr. Glenn alleges that on November 4, 2021, hours after reporting "severe operational failures and safety hazards to administrators" at New London High School, the "school officials directed Kelly Services to restrict Plaintiff's employment opportunities, resulting in his immediate removal from the school." Compl. ¶ 2. Next, he alleges that in November 2022, he reported systemic negligence and safety concerns at CB Jennings Elementary School, after which the assistant principal attempted to remove him. *Id.* ¶ 3. Finally, he alleges that in June 2023, New London directed Kelly to remove him from all teaching assignments in retaliation for emailing the superintendent and executive director of human resources to seek "fair treatment" in the hiring process. *Id.* ¶ 4.

Kelly argues that Mr. Glenn's claim for the alleged June 2023 events fails to state a claim for which relief can be granted because "an email stating a person's protected status and asking for fair treatment is not considered protected activity." Kelly MTD at 10-11. Kelly states that the hiring process for the Executive Director position and any such e-mail requesting fair treatment in the hiring process were "all outside of Kelly's knowledge and employment relationship with

24

[the] Plaintiff." *Id.* at 11. Finally, Kelly argues that Mr. Glenn has not alleged that he would not have been removed from his position on June 22, 2023 "but for" his engagement in any legally protected activity. *Id.*

Mr. Glenn responds that New London's June 2023 request to Kelly that he be removed from all teaching assignments was retaliatory against Mr. Glenn, and Kelly's failure to investigate the reason behind New London's request or provide Mr. Glenn with notice or due process was "blind compliance with a retaliatory directive." Mem. in Opp. to Kelly at 4. Mr. Glenn argues that his unanswered efforts to obtain clarification from Kelly serve as evidence of the retaliatory nature of Kelly's actions. *Id.* at 4-5. Kelly responds that Mr. Glenn still fails to allege any protected activity and also fails to allege that Kelly had any knowledge of such activity. Kelly Reply at 5.

The Court disagrees.

Because the Court has determined that Mr. Glenn has not exhausted his retaliation claim based on the November 2021 event as to Kelly, the only remaining retaliation claims are: a claim against New London for the alleged November 2021 event, a claim against New London for the alleged November 2022 event, a claim against New London for the alleged June 2023 event, and a claim against Kelly for the alleged June 2023 event. [4]

"A 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination and includes a wide range of activities, like reporting discrimination, testifying in a proceeding, or otherwise participating in an investigation about discrimination," *Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 611 (D. Conn. 2021) (internal citations and quotation marks

---

[4] Although Mr. Glenn's February 2024 EEOC charge against Kelly alleged retaliation in response to filing his July 2023 EEOC charge, Mr. Glenn's Complaint does not detail how Kelly retaliated against him in response to the July 2023 EEOC charge and in fact lacks this claim entirely.

25

omitted). Because Mr. Glenn's e-mail stated his protected status and asked for "fair treatment" in response to what he alleges was a discriminatory hiring process, his Complaint sufficiently alleges that this e-mail constitutes protected activity. *See Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009) (E-mail which read: "It is really nice to find out that the entire service dept got their review/raises that were due in July 2003. Which would be 10–12 guys/technicians" sufficiently alleged gender discrimination and constituted an "informal complaint of discrimination [that] is enough to satisfy the protected activity requirement under Title VII"); *see also Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) ("Opposition clause protects [] informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.").

To satisfy the knowledge prong of the retaliation claim, Mr. Glenn must show that Kelly had knowledge of his e-mail. Mr. Glenn alleges that on June 8, 2023, he sent the alleged e-mail to the Superintendent and Executive Director of Human Resources of New London Public Schools. Compl. ¶ 4. He alleges that fourteen days later, on June 22, 2023, Kelly removed him from his teaching assignments "without notice or explanation." *Id.*

The knowledge element requires no more than "general corporate knowledge that the plaintiff has engaged in a protected activity." *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 116 (2d Cir. 2000). This knowledge need not be established through direct evidence. Rather, a jury can find retaliation "so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge." *Id.* at 117.

Mr. Glenn has alleged that Kelly was aware of his e-mail to the district when New London directed Kelly to remove him from his positions. *See* Compl. ¶ 5 ("Kelly Services' EEOC Position Statement confirms that New London Board of Education directed them to remove Plaintiff from assignments, citing his response to the district's refusal to consider him for the Executive Director of Business and Finance position.").

Additionally, Kelly allegedly removed Mr. Glenn from his assignments fourteen days after Mr. Glenn allegedly sent an e-mail to the Superintendent and Executive Director of Human Resources of New London Public Schools. Compl. ¶ 4. And the Second Circuit has indicated that a close temporal proximity between a plaintiff's conduct and an adverse employment action taken against that plaintiff is a factor in finding that an employer possessed the requisite knowledge. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 175 (2d Cir. 2005) (finding that plaintiff's removal from company team only one day after being named a witness for plaintiff against their common employer the "most convincing" indirect evidence of employer knowledge). This is sufficient, at this stage, to satisfy the knowledge element of a retaliation claim.

Finally, Kelly argues that Mr. Glenn has not satisfied the final prong of the retaliation claim, namely that he would not have suffered the adverse employment action "but-for" having sent the relevant e-mail.

But the Supreme Court has held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Because Mr. Glenn has alleged that when New London

27

directed Kelly to remove Mr. Glenn from his assignments, it "cit[ed] his response to the district's refusal to consider him for the Executive Director of Business and Finance position," at this stage, Mr. Glenn has sufficiently alleged the causation element.

Accordingly, Kelly's motion to dismiss Claim One of the Complaint will be denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED in part and DENIED in part**.

Mr. Glenn's Title VII claim for retaliation against Kelly related to the November 2021 and November 2022 allegations, CFEPA, and promissory estoppel claims are **DISMISSED**.

To the extent that the deficiencies identified in this Ruling and Order can be remedied, Mr. Glenn must file a Third Amended Complaint by **May 1, 2026.** If he chooses to allege his CFEPA claim again as part of any Third Amended Complaint, he must append the administrative release letter from the Connecticut Commission on Human Rights and Opportunities ("CHRO") in order for this claim to proceed.

If a Third Amended Complaint is not filed by **May 1, 2026**, the case will proceed on the claims remaining in the Second Amended Complaint.

**SO ORDERED** at New Haven, Connecticut, this 30th day of March, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

28